**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN T. HOLLIS, III, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-18-2683 |
| DAYENA M. CORCORAN, WARDEN FRANK B. BISHOP, LT. THOMAS SIRES, and SAMANTHA KOCH, | * * | |
| | * | |
| Defendants. | | |

***

## MEMORANDUM OPINION

Steven Hollis, an inmate presently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed a verified Complaint, alleging that former Commissioner of Correction Dayena M. Corcoran, NBCI Warden Frank Bishop, and NBCI correctional officers Lieutenant Thomas Sires and Samantha Koch (collectively, "Defendants")[1] violated his constitutional rights in the course of a strip search performed on January 14, 2016. ECF No. 1. Defendants moved to dismiss the Complaint, or alternatively for summary judgment to be granted in their favor. ECF No. 13. The motion is now ripe for review, with no need for a hearing. *See* Loc. R. 105.6. For the reasons that follow, Defendants' motion, construed as one for summary judgment, is GRANTED.

**I.     Background**

The facts from the record are viewed most favorably to Hollis. At approximately 11:30 a.m. on January 14, 2016, Hollis left the kitchen where he had been working and headed to his housing unit. Compl. at 3, ECF No. 1. At that time, several correctional officers under the

---

[1] The Clerk shall be directed to amend the docket to correct the names of Defendants Dayena M. Corcoran and Samantha Koch.

direction of Lieutenant Sires, including Officer Koch, entered the dining area and ordered Hollis and other inmates to submit to a body cavity strip search. *Id.* Officer Koch remained at the door, approximately 35 feet from Hollis, and "glared at [his] nakedness several times over . . . as she was 'looking' at the [other inmates waiting] to be searched." *Id.* During the strip search, several male correctional officers came to the dining hall to see if they were needed to assist. *Id.* All told, fourteen officers searched thirty-four inmates in about 35 minutes.

Hollis avers that Officer Koch's presence during his strip search violated his constitutional rights "as a Muslim and as a person." ECF No. 1 at 4. Specifically, Hollis maintains that the "Islamic faith requires modesty and integrity from being viewed by a female" to whom he is not married. *Id.* at 5. In addition, he claims that the strip search was not ordered for security purposes but was random and designed to humiliate him. *Id.* at 4. Hollis admits this was the only time he had been strip searched in the presence of a female officer. *Id.*

On February 4, 2016, Hollis complained of the search by filing an Administrative Remedy Procedure ("ARP") (Request No. NBCI-0328-16). ECF No. 13-10. On February 12, 2016, Defendant Lieutenant Sires interviewed Hollis and Officer Koch, among others, in connection with the investigation. *Id.* at 6. Koch stated that on January 14, 2016, she was assigned to monitor the dining hall exit doors to ensure that a team could respond quickly if needed. *Id.* at 8. Koch initially stood at the exit door farthest from the location of the strip searches and later moved to another exit door where numerous staff obstructed her view of the strip searches. *Id.* She stated that she did not attempt to view the strip searches, nor did she make any remarks about the inmates. Koch also attested, separately by affidavit, that she had no knowledge of Hollis' religious faith at the time of the search, and that she did not take any action designed to offend or embarrass Hollis or any other inmate. ECF No. 13-6 ¶10. Rather, her focus was on staff safety, ensuring that inmates

exited quickly and returned to their units in an orderly manner. ECF No. 13-10 at ¶ 8.

Based on the investigation, Lieutenant Sires recommended that the ARP should be dismissed because search was conducted for legitimate security purposes, and without wrongdoing or injury to Hollis. *Id.* at 6-11. On February 24, 2016, Assistant Warden Jeff Nines dismissed the ARP on similar grounds. *Id.* at 2. On March 10, 2016, Hollis appealed Nines' decision to the Commissioner of Correction. *Id.* at 15. After further due diligence, Commissioner Corcoran dismissed the appeal, stating that the Warden fully addressed Hollis' initial complaint. *Id.* at 22. On June 27, 2016, Hollis filed a grievance appeal from the disposition of his ARP to the Inmate Grievance Office ("IGO"). Decl. of Hassan, ECF No. 13-11. The IGO administratively dismissed that appeal on August 8, 2016, finding that Hollis failed state a claim on which administrative relief could or should be granted. *Id.* Hollis filed suit on August 27, 2018. ECF No. 1.

**II.     Standard of Review**

Defendants move to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. Because the parties have submitted evidence outside the four corners of the Complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Factually unsupported claims and defenses may not proceed to trial. *Bouchat,* 346 F.3d at 526.

### III. Analysis

#### A. Fourth Amendment Claim

Hollis contends that Defendants violated his Fourth Amendment rights when they subjected him to a random strip search in the presence of a female correctional officer. The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. amend. IV. However, prisoners' rights in this respect are diminished by virtue of their status as inmates. *See Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir.1981); *Hudson v. Goodlander*, 494 F. Supp. 890, 891 (D. Md. 1980). Accordingly, a body cavity search does not violate an inmate's Fourth Amendment rights if the search is reasonable and not punitive. *Bell*, 441 U.S. at 545–546, 558–61.

Reasonableness of a search is determined when considering the scope of the intrusion, how and where the search is conducted, and the justification for the search. *Bell,* 441 U.S. at 559. "The reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed." *Coley v. Harris*, 30 F. Supp. 3d 428, 434

(D. Md. 2014), *quoting Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001). Courts also should give great deference to officials' decisions as they relate to the overall administration of the facility. *Bell,* 441 U.S. at 547. As the United States Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

That said, the United States Court of Appeals for the Fourth Circuit has recognized that inmates maintain "a special sense of privacy in their genitals, and involuntary exposure of them in the presence of the other sex may be especially demeaning and humiliating." *Lee*, 641 F.2d at 1119. Consequently, when the search is "not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons." *Id.*

The record evidence viewed most favorably to Hollis demonstrates that even if Koch observed the strip search, her presence was reasonably necessary to maintain adequate security of the prison. The search was conducted for an eminently legitimate security purpose -- to prevent contraband from leaving the kitchen. The search was also conducted efficiently and expeditiously, to minimize the degree of bodily intrusion visited on the inmates. *See Harris v. Miller*, 818 F.3d 49, 59-60 (2d Cir. 2016) ("A strip search conducted in a professional manner is more reasonable than one that is not.").

As for Officer Koch, she stood guard at the dining hall entrance, roughly thirty-five feet away from where the search was being conducted. Even if she could see the inmates, her involvement was limited and hardly routine. In fact, even Hollis acknowledges that this was the first and only time he was strip searched while a female officer was present. Accordingly, an isolated incident where body cavity searches were performed some thirty-five feet away from where a female guard had been stationed does not rise to a claim of constitutional proportion. *See*

*e.g. Arey v. Robinson*, 819 F.Supp. 489 (D. Md. 1992); *Hudson*, 494 F. Supp. 890, 891 (D. Md. 1980); *Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985) (noting surveillance of nude inmates by female guards where, distant, infrequent, and restricted by obstacles is not unreasonable); *Thomas v. Shields,* 981 F.2d 1252 (Table) (4th Cir. 1992) (stating the inmate's "right to privacy was not violated by the occasional, inadvertent encounter with female guards"). Balancing the institutional needs against this isolated incident, the search was reasonably necessary under the circumstances. *See Riddick v. Sutton*, 794 F. Supp. 169, 173 (E.D.N.C. 1992); *see also Timm v. Gunter*, 917 F.2d 1093, 1101-1102 (8th Cir. 1990) (holding that minimal intrusions on inmates' privacy are outweighed by institutional concerns for safety opportunity); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (recognizing the security interest in placing staff members most efficiently within the facility). Defendants' Motion for Summary Judgment is granted as to the Fourth Amendment claim.[4]

**B.      First Amendment Claim**

Hollis also argues that his having been strip searched in the presence of a female officer violated his First Amendment right to exercise freely his religion, as his Islamic faith requires modesty and integrity. Inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (*per curiam*)). Prisoners, therefore, must be afforded "reasonable" opportunities to practice their faith. *Cruz*, 405 U.S. at 322. However, "negligent acts by officials causing

---

[4] To the extent Hollis contends that Defendants violated their own policy, such a claim does not rise to a constitutional violation. The adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016).

unintended denials of religious rights do not violate the Free Exercise Clause." *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006).  Because only intentional conduct is actionable under the Free Exercise Clause of the First Amendment, the inmate must demonstrate "a conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Lovelace,* 472 F.3d at 201.

Viewing record most favorably to Hollis, no evidence reflects Officer Koch or any of the other correctional officers were aware that Hollis was Muslim, that his faith required modesty, or that being seen naked by a female who is not his wife violated the tenets of his faith.  Koch attests that she was unaware Hollis' specific religious beliefs and took no action intentionally to offend or embarrass him.  No other record evidence supports the claim, and thus summary judgment shall be granted in Defendants' favor.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion, construed as one for summary judgment, is granted.  A separate Order follows.

    3/9/20                                          /S/
Date                                                Paula Xinis
                                                      United States District Judge